[No. 21398-6-III.   Division Three.   May 13, 2004.]

KAREN WRIGHT, *Individually and on Behalf of All Others Similarly Situated*, ET AL., *Respondents*, v. MILAN JECKLE, ET AL., *Petitioners*.

*Jeffrey L. Supinger, Brian T. Rekofke,* and *Robert J. Caldwell* (of *Witherspoon, Kelley, Davenport & Toole, P.S.*), for petitioners.

*Robert J. Crotty, Darrell W. Scott,* and *Tami Jo Wilcox* (of *Lukins & Annis, P.S.*); and *Britt L. Tinglum* and *Amy N. Linscheid Hanson* (of *Keller Rohrback, L.L.P.*), for respondents.

BROWN, J. — This discretionary review involves the Washington version of the Uniform Health Care Information Act (the Act), chapter 70.02 RCW, which in relevant part prohibits health care providers from disclosing health care information without a patient's consent. Here we are concerned with the Act's application to a discovery order in a suit that alleged improprieties in Dr. Milan Jeckle's treatment of obesity patients with a diet drug, commonly known as fen-phen. Over Dr. Jeckle's objection, the Spokane superior court ordered him to turn over a patient list to the plaintiffs' mailing agent for the purpose of giving a class-action notification. The issue is whether the class action notice procedure ordered by the superior court in this case effectively ensured that those who had access to the list of

names would not know the health care condition of the persons on the list. We conclude the trial court did not err in ordering notification by the contested procedure. Accordingly, we affirm.

## FACTS

In November 1998, Karen Wright and Rosa Lee Johnson filed a class action against Dr. Milan Jeckle d/b/a All Valley Medical (hereafter Dr. Jeckle), on behalf of themselves and all others similarly situated. They alleged Dr. Jeckle had violated the fiduciary relationship of doctor and patient by advertising and promoting the drug popularly known as fen-phen, "creating for himself a financial inducement to place as many patients as possible on fen-phen and to prolong the period of time the patients were on the medications." Clerk's Papers (CP) at 6. Further, to maximize his profits, he allegedly required patients to purchase fen-phen from his office and thereby prevented them from obtaining the advice of an independent pharmacist regarding the labeling of the drug as dangerous. The suit also alleged he allowed office personnel who were not medically trained to adjust the medications of his fen-phen patients.

The plaintiffs sought certification of their action as a class action under CR 23(a)(1)-(4) and 23(b)(1)(B) and 23(b)(3). They also asked for damages for allegedly wrongful profits gained by Dr. Jeckle by his breach of his fiduciary doctor-patient relationship. Alternatively, they sought return of all monies they had paid him. In May 2002, the plaintiffs filed a revised second amended complaint in which they added allegations that Dr. Jeckle's "advertising, marketing, and/or distribution of the diet drugs constituted an unfair or deceptive practice within the meaning of the Washington Consumer Protection Act [ch. 19.86 RCW]." CP at 126.

On April 1, 2002, the plaintiffs moved the superior court for an order certifying the lawsuit as a class action and approving their proposed plan for providing notice of the

class action to the class members. The proposed plan involved direct mailings to Dr. Jeckle's patients, using a list of names to be provided by him. On April 19, 2002, the court entered its order granting the motion for class certification.

Dr. Jeckle objected to the plaintiffs' proposed notice plan, contending it violated RCW 70.02.020 of the Act. Under RCW 70.02.020, "a health care provider . . . may not disclose health care information about a patient to any other person without the patient's written authorization." According to Dr. Jeckle, a list of his patients would be tantamount to disclosing health care information because it would identify patients who sought his care for treatment of obesity. On May 6, 2002, he offered an alternative notice plan, as set forth by Jeanne Finegan, an advertising expert with experience in devising plans to provide notice to class members in class action lawsuits. Ms. Finegan's plan relied upon extensive newspaper, television, cable, radio, press release, and internet website notification.

On August 16, 2002, the superior court entered its order approving the plaintiffs' notice plan. It found, "Dr. Jeckle possesses the names and last known addresses of the class members in his patient records and has asserted the physician-patient privilege to prevent the discovery of the identity and known addresses of those patients. The best notice practicable to the Class under the circumstances of this case requires individual notice to the Class by mailing the Class Action Notice . . . to the last known address of all class members, as obtained from Dr. Jeckle's patient records. CR 23(c)(2)." CP at 281. And, regarding Dr. Jeckle's physician-patient privilege concerns, a "[c]ourt appointed third-party notice provider will be responsible for keeping the names and addresses provided by Dr. Jeckle confidential." CP at 281.

The notice procedure ordered by the superior court segregated those persons who had knowledge of the condition (treatment of obesity) that was the subject of the lawsuit, from those persons who had knowledge of the patients' names. The employees of one mailing agent had the job of

inserting the printed notices of the lawsuit in envelopes that had the court's return address on the left corner and then sealing the envelopes. The employees of a second mailing agent had the job of addressing the envelopes using the list of names the court ordered Dr. Jeckle to provide. The notice procedure is set forth in the court's order, as follows:

4. Class counsel shall provide Court-appointed third-party notice provider, Comet Press . . . with a 3 x 5" diskette, a CD, or an email attachment containing the Court-approved Class Action Notice and the return address to be printed on the Class Action Notice envelopes within 7 days of the date of this Order.

5. Comet Press shall then, within 14 days of the date of this Order, duplicate the Class Action Notice . . . seal [it in] the envelope, print the return address of the Court on the envelope, and forward the sealed envelopes containing the Class Action Notice to another court-appointed agent, Walt's Mailing Service.

6. Meanwhile, within 30 days of the date of this Order, . . . Dr. Jeckle, by and through his counsel, shall hand-carry a 3.5" diskette or CD containing the names and addresses only of all patients to whom he sold the diet drugs . . . to Court-appointed third-party notice provider, Lori Kilduff, at Walt's Mailing Service.

7. Within 45 days of the date of this Order, Walt's Mailing Service shall then address, affix postage, and mail the sealed envelopes containing the Class Action Notice.

CP at 284-85.

We granted discretionary review.

## ANALYSIS

### A. Notification Procedure

The issue is whether the class action notice procedure ordered by the superior court violated the health care disclosure provisions of RCW 70.02.020.[1]

---

[1] The court recognizes that the superior court exercises discretion under CR 23(d) in crafting an appropriate procedure for giving notice of a class action. *See*

Under RCW 70.02.020, "[e]xcept as authorized in RCW 70.02.050, a health care provider . . . may not disclose health care information about a patient to any other person without the patient's written authorization." " 'Health care information' means any information . . . that identifies or can readily be associated with the identity of a patient and directly relates to the patient's health care . . . ." RCW 70.02.010(6).

■ RCW 70.02.010(6) is clear. Its definition of "[h]ealth care information" has two requisites—patient identity and information about the patient's health care. Here, the court's notice procedure ensured that persons who had access to the list of patients' names did not also have access to any information from which they could infer the persons on the list had received medical treatment for obesity. Thus, the disclosure of names to the persons who addressed the sealed envelopes did not constitute disclosure of the patients' health care information. Hence, Dr. Jeckle's arguments fail.

Dr. Jeckle is not aided by *Doe v. Group Health Coop., Inc.*, 85 Wn. App. 213, 932 P.2d 178 (1997). There, the defendant had used information identifying the plaintiff in a training session on a claim-processing system for patients obtaining mental health services from other providers. *Id.* at 215-16. When a trainee recognized the plaintiff's name, the trainer had the trainees remove the identifying material from the training manual. *Id.* at 216.

The plaintiff sued under chapter 70.02 RCW for improper disclosure. The court reversed a summary dismissal of the plaintiff's action, holding the "fact that [plaintiff] has a consumer number does not, by itself, directly relate to his health care." *Group Health Coop.*, 85 Wn. App. at 217. But

---

*Sitton v. State Farm Mut. Auto. Ins. Co.*, 116 Wn. App. 245, 252, 63 P.3d 198 (2003). The issue in the appeal here concerns only the application of the Act to such a procedure.

the fact the person is receiving a specific type of treatment is information directly related to that person's health. *Id.* Since the trainees knew they were present to learn how to access the mental health treatment history of Group Health patients, "a reasonable person could infer from the context of the disclosure that [plaintiff] was a recipient of mental health treatment." *Id.*

Here, in contrast, only Walt's Mailing Service will have access to the names on the list. And, neither it nor its employees will know what is in the sealed envelopes. The procedure does not allow for any inference as to anything about the persons on the list other than they are receiving an envelope with something in it from the court.

Dr. Jeckle argues at least one person, Lori Kilduff of Walt's Mailing Service, will have information allowing her to infer the listed names were those of patients receiving obesity treatment. In support, he points to the unsigned mailing declaration prepared for Ms. Kilduff. The declaration is on pleading paper with the case caption at the top. He argues Ms. Kilduff could use the case caption information to request the case file from the superior court clerk and thereby learn of the nature of the action against Dr. Jeckle. However, plaintiffs' counsel in oral argument before this court stated that the declaration prepared for Ms. Kilduff's signature has been changed and now bears no case caption. The change eliminates any possibility she will learn of the nature of the action that is the subject of the mailing.

In sum, we conclude Dr. Jeckle can comply with the superior court's notice procedure without disclosing his patients' health care information. Our conclusion renders it unnecessary to discuss the plaintiffs' argument that the information disclosed is merely directory information that is exempted from the disclosure prohibition by the provisions of RCW 70.02.050. Our conclusion also renders it unnecessary for us to discuss whether the court violated RCW 70.02.060, which grants 14 days to an affected patient

to seek a protective order. Similarly, we need not discuss whether Dr Jeckle is exposed to liability under RCW 70.02.170 for not complying with the nondisclosure provisions of the Act. Nor is he liable under RCW 5.60.060(4) for disclosing information acquired in attending his patients. When a physician's testimony is "given in response to questions and in obedience to the ruling of the court, . . . [the physician is] not . . . liable" to the patient. *Smith v. Driscoll*, 94 Wash. 441, 445-46, 162 P. 572 (1917).

## B. Due Process Arguments

■ Dr. Jeckle argues due process requires that his patients have notice of any disclosure of their names to third parties. Considering our conclusion that the court's procedure does not disclose health care information, at best the issue is whether due process requires the patients be notified before their names are disclosed.

The due process right to notice arises from the fifth and fourteenth amendments to the United States Constitution and article I, section 3 of the Washington Constitution. The provisions are identical—"No person shall be deprived of life, liberty, or property without due process of law." Dr. Jeckle cites no authority for the proposition that release of a list of patients' names amounts to a deprival of the patients' "life, liberty, or property." Without such a showing, no due process rights arise.

## C. Attorney Fee Request

■ Dr. Jeckle asks for an award of attorney fees here. Dr. Jeckle does not state what "well recognized ground in equity" supports an attorney fee award in this court. His argument possibly suggests a variation of the private attorney general doctrine. That doctrine is based on a belief that persons who pursue legal remedies that benefit the public should be reimbursed their attorney fees. *Blue Sky Advocates v. State*, 107 Wn.2d 112, 121, 727 P.2d 644 (1986). However, our courts have refused to adopt the private

attorney general doctrine. *Id*. at 122; *Hillis v. Dep't of Ecology*, 131 Wn.2d 373, 401, 932 P.2d 139 (1997). We decline to award fees under the circumstances.

Affirmed.

SWEENEY, A.C.J., and KURTZ, J., concur.