Johanson, P.J.
¶ 1 This case arose from Donna Zink's 2014 Public Records Act (PRA), ch. 42.56 RCW, request for level 1, 2, and 3 sex offender records held by Pierce County. After being notified of Zink's request, sex offenders John Doe D, John Doe G, and John Does L-O initiated three lawsuits, two of which were class actions, to enjoin various records' release. The County also brought suit to enjoin the release of juvenile records in its possession, and Zink brought counterclaims against the County for PRA violations.
¶ 2 After consolidating the cases, the superior court granted the offenders' motions for summary judgment and permanent injunctions and denied Zink's cross motion. The superior court also granted the County's motion for summary judgment of Zink's counterclaims and entered a permanent injunction barring the County from releasing unredacted juvenile records.
¶ 3 Zink and the County both appeal. Zink argues that the superior court erred when it granted the offenders' and the County's summary judgment motions, certified the offenders' lawsuits as class actions, and allowed the offenders to proceed under pseudonyms. The County cross appeals and argues that the superior court erred when it entered summary judgment and permanent injunctions in the offenders' lawsuits.
¶ 4 We affirm the orders granting class certification in Does L-O's and D's lawsuits. We reverse and remand the order allowing Does L-O to proceed under pseudonyms, but we do not address whether Does G and D were correctly allowed to proceed under pseudonyms because this issue is moot as to them. We affirm the order granting summary judgment dismissal of Zink's counterclaims and a permanent injunction in the County's lawsuit. Finally, we affirm in part and reverse in part the orders granting the offenders' motions for summary judgment and permanent injunctions in Does L-O's and D's lawsuits, reverse the order granting Doe G's motion for summary judgment and a permanent injunction, and remand for further proceedings.
*844 FACTS
I. PRA REQUEST
¶ 5 In October 2014, Zink made a PRA request to the Pierce County Sheriff's Department (PCSD), Pierce County Prosecutor's Office (PCPO), or "any office or department of Pierce County"[1] for all special sex offender sentencing alternative (SSOSA), RCW 9.94A.670, and special sex offender disposition alternative (SSODA), RCW 13.40.162, evaluations, victim impact statements, registration forms for "all sex offenders registered in Pierce County," and a "[l]ist and/or database of all sex offenders registered in Pierce County." Clerk's Papers (CP) at 252. The PCSD began notifying the approximately 3,000 registered offenders who were the subjects of the requested records.
¶ 6 Zink later made two more PRA requests. In her second and third requests, Zink sought "any and all" judgment and sentences related to convicted sex offenders. CP at 1131.
II. SEX OFFENDERS' AND PIERCE COUNTY'S LAWSUITS
¶ 7 Zink's requests spawned lawsuits from four sets of plaintiffs-a group of level 1 offenders, a group of level 2 and 3 offenders, one individual level 3 offender, and the County on behalf of PCSD-to bar requested records' release, as set forth below.
A. DOES L-O: COMPLIANT LEVEL 1 OFFENDERS
¶ 8 Does L-O, who identified themselves as level 1 sex offenders who were compliant with registration, filed a class action lawsuit on behalf of all the compliant level 1 sex offenders who were the requested records' subjects, including both juvenile and adult offenders. Does L-O made three exemption arguments. First, they argued that all requested records were exempt from disclosure under a portion of the "Community Protection Act" (CPA), former RCW 4.24.550 (2011), as an "other statute" exemption[2] to the PRA. Second, they argued that SSOSA/SSODA evaluations were exempt from disclosure under the PRA's exemption incorporating the Uniform Health Care Information Act (UHCIA), ch. 70.02 RCW. Third, they argued that juvenile SSODA evaluations were exempt from disclosure under ch. 13.50 RCW, pertaining to juvenile records, as another "other statute" exemption.
B. DOE D: COMPLIANT LEVEL 2 AND 3 OFFENDERS
¶ 9 Doe D, who identified himself as a level 3 sex offender who was compliant with registration residing in Pierce County, filed suit to enjoin the release of "all" registration records and SSOSA evaluations. Doe D later moved to certify his lawsuit as a class action, representing level 2 and 3 sex offenders. Doe D made two exemption arguments: first, that the CPA, former RCW 4.24.550, was an "other statute" exemption that barred disclosure of registration forms, and second, that the SSOSA evaluations were exempt under the PRA's UHCIA exemption.
C. DOE G: COMPLIANT LEVEL 3 OFFENDER
¶ 10 Doe G, who identified himself as a level 3 sex offender who was compliant with registration conditions, individually brought suit against Pierce County. He argued that first, his registration forms were exempt from disclosure under the CPA, former RCW 4.24.550, as an "other statute" exemption. And he argued that second, his SSOSA evaluations were exempt from disclosure under the UHCIA as a PRA exemption.
¶ 11 Doe G later explained that although he was included in Doe D's class of level 2 and 3 sex offenders, he was "differently situated" because he had participated in a SSOSA evaluation but did not receive a SSOSA sentence. CP at 1204. He did not file a SSOSA evaluation with the sentencing court, *845 and Pierce County could not locate Doe G's SSOSA evaluation.
D. PIERCE COUNTY
¶ 12 Pierce County filed a lawsuit in which it made one exemption argument: that ch. 13.50 RCW, was an "other statute" exemption to the PRA. Thus, records other than the official juvenile court file, such as SSODA evaluations, held by PCSD, a juvenile justice or care agency, could not be released under the PRA.
¶ 13 Zink brought counterclaims alleging various PRA violations by "Pierce County" and sought dismissal of the County's action. CP at 1074. Specifically, she claimed that the PCPO violated the PRA because it (1) refused to provide documents electronically, (2) assessed excessive fees without applying the PRA's factors for determining costs, (3) failed to identify an exemption or provide an exemption log, and (4) improperly notified third parties. And she claimed that the PCSD violated the PRA because it (1) assessed excessive fees without applying the PRA's factors for determining costs, (2) failed to identify an exemption or provide an exemption log, and (3) improperly notified third parties.
E. OFFENDERS' LAWSUITS: CLASS CERTIFICATION AND PERMISSION TO PROCEED UNDER PSEUDONYMS
¶ 14 Does L-O, the level 1 offenders, and Doe D, a level 3 offender, moved to certify their respective lawsuits as class actions. Over Zink's objections, both lawsuits were certified as class actions. Does L-O represented all compliant level 1 sex offenders named in registration forms, a registration database, and SSOSA or SSODA evaluations in the County's possession. Doe D represented all level 2 or 3 sex offenders whose registration forms or whose "psychosexual" evaluations were in the County's possession. CP at 3080.
¶ 15 All offenders moved to proceed under pseudonyms and were allowed to do so. In Does L-O's lawsuit, the superior court entered an order, in which it found that "[f]orcing Plaintiffs to disclose their identities to bring this action would eviscerate their ability to seek relief" and that they had "demonstrated a significant risk of physical, mental, economic, and emotional harm if their identities are disclosed." CP at 980. Further, allowing Does L-O to proceed under pseudonyms would not affect the defendant and would affect only the public's ability to ascertain Does L-O's names, which had "little bearing on the public's interest in the dispute or its resolution." CP at 980. Thus, the Does L-O's "interest in proceeding anonymously outweighs the public interest in knowing their names." CP at 980.
¶ 16 In Doe D's lawsuit, by the time Doe D sought a preliminary injunction, his identity had been disclosed. He clarified that he no longer sought permission to proceed under a pseudonym.
III. CONSOLIDATION AND POSTCONSOLIDATION PROCEEDINGS
¶ 17 The superior court consolidated all four lawsuits.
A. SUMMARY JUDGMENT MOTIONS AND RESPONSES
1. DOES L-O
¶ 18 Does L-O moved for summary judgment and a permanent injunction to bar the release of level 1 sex offenders' registration records and SSOSA/SSODA evaluations. They made three PRA exemption arguments. First, they argued that the CPA, former RCW 4.24.550, was an "other statute" that barred release of their SSOSA/SSODA evaluations and registration records. Second, they argued that ch. 13.50 RCW was an "other statute" that exempted just their juvenile SSODA evaluations from release. Third, they argued that the PRA's UHCIA exemption barred SSOSA/SSODA evaluations from release.
¶ 19 In support of their summary judgment motion, Does L-O relied on their own declarations and those of various attorneys and treatment professionals. Their supporting evidence documented harm to the offenders and to the public's interest in effectively *846 treating the sex offenders that would result from disclosure.[3]
¶ 20 In response to Does L-O's summary judgment motion, the County agreed that ch. 13.50 RCW was an "other statute" exemption that exempted juvenile SSODA evaluations from production but otherwise disagreed with Does L-O's arguments. For her part, Zink disputed that any of the requested records were exempt.
2. DOE D
¶ 21 Doe D moved for summary judgment and a permanent injunction preventing the release of registration forms and the database under the CPA, former RCW 4.24.550, as an "other statute" exemption to the PRA. Doe D also requested that the injunction bar the release of SSOSA/SSODA records under the PRA's UHCIA exemption. Doe D supported his motion with evidence of harm to the sex offenders if their information was disclosed.[4]
¶ 22 In its response to Doe D's summary judgment motion, the County argued that the CPA, former RCW 4.24.550, and the PRA's UHCIA exemption did not exempt the requested records from production. Zink also responded that the SSOSA/SSODA evaluations were not exempt.
3. DOE G
¶ 23 Doe G moved for summary judgment and for a permanent injunction prohibiting the release of his SSOSA evaluations and registration forms. Doe G argued that his SSOSA evaluations were exempt because they were not public records and that his registration forms were exempt insofar as they contained personal information of the type used to apply for a driver's license under RCW 42.56.230(7)(a) ("the personal information exemption"). Doe G supported his summary judgment motion with evidence that he faced harm from disclosure of his information; he also incorporated by reference the other offenders' evidence.[5]
¶ 24 In response to Doe G's motion, the County argued that the personal information exemption, RCW 42.56.230(7)(a), did not exempt any personal information at issue. Zink also filed a response in which she addressed the CPA, former RCW 4.24.550. In addition, she filed a consolidated cross motion for summary judgment dismissal of the three offender lawsuits. Among other arguments, she claimed that as a matter of law, the records at issue had to be released under a portion of the Washington State Criminal Records Privacy Act (CRPA), ch. 10.97 RCW.
4. PIERCE COUNTY
a. PIERCE COUNTY'S MOTION
¶ 25 The County moved for a permanent injunction barring the release of unredacted juvenile sex offender documents in PCSD's *847 possession under ch. 13.50 RCW as an "other statute" exemption to the PRA. The County argued that based on evidence of the highly sensitive nature of juvenile documents, disclosure would substantially and irreparably damage juvenile offenders.
¶ 26 The County also requested summary judgment of Zink's counterclaims. In support of that request, the County provided declarations from the PCPO's and the PCSD's public records officers. The PCPO officer explained that she received Zink's November 2014 request for sex offender judgment and sentences. To receive copies of the records, which were not electronic, the PCPO assessed $0.15 per page, plus postage, and an hourly labor rate for scanning records to compact disk (CD) or faxing copies. Zink, however, requested that records be provided electronically through e-mail or "the cloud." CP at 1701. Zink declined to pay the fee to scan the records to CD or fax her copies, and the PCPO closed Zink's request. It never gave any third-party notice.
¶ 27 The PCSD officer explained that PCSD, a juvenile justice agency, possessed juvenile records that included more than just those documents found within the official juvenile court file, including offenders' mental health and healthcare records, such as juvenile rehabilitation administration intake and referral records. As of the time of the PCSD officer's declaration, production in response to Zink's PRA request was not complete. The officer was aware that in other jurisdictions where similar requests had been made, offenders had successfully enjoined their records' release.
¶ 28 After receiving Zink's October PRA request, the PCSD began sending installments of responsive records and accompanying exemption logs.[6] By August 2015, the PCSD had sent Zink all noncompliant level 1 sex offender registration records and some sex offender registration databases for level 2 and 3 and noncompliant level 1 sex offenders, sex offender judgments and sentences, and victim impact statements. Other than victim impact statements and judgments and sentences, the PCSD sent no records related to compliant level 1 sex offenders. Neither did the PCSD include any juvenile convictions in the judgments and sentences.
¶ 29 Related to Zink's counterclaims against the PCPO, the County argued that the PCPO (1) did not violate the PRA by refusing to provide documents electronically, (2) accurately calculated costs, (3) did not need to identify an exemption or produce an exemption log because PCPO never produced any responsive documents, and (4) did not notify any third parties. Related to Zink's counterclaims against PCSD, the County argued that PCSD (1) did not assess any fees, (2) provided exemption logs, notified Zink of exemptions, and was not required to list a specific exemption when giving third-party notice, and (3) properly notified third parties.
b. ZINK'S RESPONSE
¶ 30 Zink filed a response to the County's motion for summary judgment of her counterclaims in which she argued that the existence of genuine issues of material fact precluded summary judgment of her counterclaims and that summary judgment was not appropriate as a matter of law. She relied upon her declaration, which repeated her allegation that PCSD was "withholding" records and had taken "final" action when the County filed for injunctive relief. CP at 2104-05. Zink's declaration also included her *848 claim that her October 3 request was directed to both PCPO and PCSD, but PCPO did not respond. And she argued that ch. 13.50 RCW was not an "other statute" exemption that exempted juvenile sex offender records from production.
B. SUMMARY JUDGMENT ORDERS
¶ 31 The superior court entered orders on the parties' summary judgment motions as set forth below.
1. OFFENDERS' LAWSUITS
¶ 32 In Does L-O's lawsuit, the superior court determined that ch. 13.50 RCW and the CPA, former RCW 4.24.550, were both "other statute" exemptions to the PRA. The superior court granted Does L-O's summary judgment motion and entered declaratory judgment and a permanent injunction that "registration records and information" and unredacted SSOSA/SSODA evaluations were exempt under the CPA, former RCW 4.24.550, that unredacted SSOSA/SSODA evaluations were exempt under the PRA's UHCIA exemption, and that unredacted juvenile SSODA evaluations were exempt under ch. 13.50 RCW. CP at 2330. The superior court also ruled that juvenile SSODA evaluations and other juvenile documents could be released if redacted.
¶ 33 In Doe D's lawsuit, the superior court determined that ch. 13.50 RCW and the CPA, former RCW 4.24.550, were both "other statute" exemptions to the PRA. The superior court granted Doe D's summary judgment motion and entered declaratory relief and a permanent injunction. It determined that for both level 2 and 3 sex offenders, "registration records and information" and unredacted SSOSA/SSODA evaluations were exempt under the CPA, former RCW 4.24.550, as incorporated into the PRA. CP at 2560-61. Further, for both level 2 and level 3 offenders, unredacted SSOSA/SSODA evaluations fell within the UHCIA exemption to the PRA and unredacted juvenile SSODA evaluations were exempt under ch. 13.50 RCW as incorporated into the PRA. The superior court determined that information in registration forms that fell under the personal information exemption, RCW 42.56.230(7), because it was of the type required to apply for a driver's license was exempt. Finally, the superior court ruled that juvenile SSODA evaluations and other juvenile documents could be released if redacted.
¶ 34 In Doe G's lawsuit, the superior court determined that a portion of the PRA, the personal information exemption, RCW 42.56.230(7)(a), exempted disclosure of all Doe G's sex offender records containing personal information of the type used to apply for a driver's license. Further, the superior court ruled that the CPA, former RCW 4.24.550, was an "other statute" under the PRA. The superior court granted Doe G's summary judgment motion and entered a permanent injunction barring the release of his sex offender registration forms and SSOSA under the CPA, former RCW 4.24.550, and the personal information exemption, RCW 42.56.230(7)(a), insofar as they contained personal information of a type used to apply for a driver's license. The superior court also determined that Doe G's SSOSA evaluation was exempt under the PRA's UHCIA exemption, the PRA's definition of a "public record," and the PRA's attorney-client privilege and work production exemptions. CP at 2311.
2. PIERCE COUNTY
a. SUMMARY JUDGMENT AND PERMANENT INJUNCTION
¶ 35 Related to the County's motion for a permanent injunction prohibiting release of unredacted juvenile records, the superior court ruled that ch. 13.50 RCW was an "other statute" exemption under the PRA and that "PCSD [wa]s a 'juvenile justice or care agency' under [ch.] 13.50 [RCW]." CP at 2336. Accordingly, the superior court entered a permanent injunction barring release of juvenile records or information about juveniles other than that available in an open court file. However, juvenile records could be released if redacted.
¶ 36 Finding no genuine issue of material fact, the superior court granted the County's motion for summary judgment of Zink's counterclaims.
*849 b. DENIAL OF ZINK'S CROSS MOTION FOR SUMMARY JUDGMENT
¶ 37 The superior court denied Zink's motion for summary judgment in all three offender lawsuits. In doing so, it ruled that Zink did not file a request for release under RCW 42.56.210 and failed to meet her burden to show that that provision applied.
¶ 38 Zink appeals the summary judgment, pseudonym, and class certification orders.[7]
ANALYSIS
I. ORDERS GRANTING SUMMARY JUDGMENT AND PERMANENT INJUNCTIONS
A. LEGAL PRINCIPLES: SUMMARY JUDGMENT AND THE PRA
¶ 39 We review summary judgment decisions and actions under the PRA's injunction statute, RCW 42.56.540, de novo. Planned Parenthood of the Great Nw. v. Bloedow , 187 Wash.App. 606, 618, 350 P.3d 660 (2015). In reviewing summary judgment, we perform the same inquiry as the superior court, and we affirm where " 'there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.' " Lakey v. Puget Sound Energy, Inc. , 176 Wash.2d 909, 922, 296 P.3d 860 (2013) (quoting Qwest Corp. v. City of Bellevue , 161 Wash.2d 353, 358, 166 P.3d 667 (2007), abrogated on other grounds by Cost Mgmt. Servs., Inc. v. City of Lakewood , 178 Wash.2d 635, 310 P.3d 804 (2013) ). "We review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in [the nonmoving] party's favor." Lakey , 176 Wash.2d at 922, 296 P.3d 860.
¶ 40 The PRA "is a 'strongly worded mandate for broad disclosure of public records.' " John Doe A v. Wash. State Patrol , 185 Wash.2d 363, 371, 374 P.3d 63 (2016) ( WSP ) (quoting Hearst Corp. v. Hoppe , 90 Wash.2d 123, 127, 580 P.2d 246 (1978) ). In enacting the PRA, the legislature made certain records exempt from production through specific exemptions listed in the PRA itself. Resident Action Council v. Seattle Hous. Auth. , 177 Wash.2d 417, 432, 327 P.3d 600 (2013). We interpret these exemptions narrowly and interpret disclosure provisions liberally. WSP , 185 Wash.2d at 371, 374 P.3d 63. Three of these exemptions are pertinent to this appeal.
¶ 41 First, there is an exemption from public disclosure for "health care information" under the UHCIA, ch. 70.02 RCW. RCW 42.56.360(2) ; John Doe G v. Dep't of Corr. , 190 Wash.2d 185, 193, 410 P.3d 1156 (2018) ( Doe G II ). A SSOSA evaluation is not exempt under the UHCIA exemption in the PRA. Doe G II, 190 Wash.2d at 197, 410 P.3d 1156.
¶ 42 Second, there is an exemption from public disclosure for certain personal information. RCW 42.56.230(7)(a). Exempt personal information under the PRA includes "[a]ny record used to prove identity, age, residential address, social security number, or other personal information required to apply for a driver's license or identicard." RCW 42.56.230(7)(a).
¶ 43 Third, there is an "other statute" exemption that incorporates the specific exemptions of an "other statute which exempts or prohibits disclosure of specific information or records." Former RCW 42.56.070(1) (2005). Ch. 13.50 RCW is one such statute. Wright v. Dep't of Soc. & Health Servs. , 176 Wash.App. 585, 597, 309 P.3d 662 (2013). But the CPA, former RCW 4.24.550, is not such a statute. WSP , 185 Wash.2d at 368, 374 P.3d 63.
¶ 44 The PRA also contains an injunction statute, which provides for court protection of public records that fall within the PRA's exemptions. See RCW 42.56.540.
*850 B. SSOSA AND SSODA EVALUATIONS
¶ 45 "A SSOSA is a sentencing alternative that allows a trial court to suspend a first time sex offender's felony sentence if that offender meets certain statutory criteria." Doe G II, 190 Wash.2d at 192, 410 P.3d 1156. Under the SSOSA statute, an offender who has requested a SSOSA must undergo an examination "to determine whether the offender is amenable to treatment." RCW 9.94A.670(3). The sentencing court uses the evaluation that results from the examination to determine "whether the offender should be granted an alternative sentence instead of [prison] time." Doe G II, 190 Wash.2d at 194, 410 P.3d 1156. Because they are forensic examinations made to aid a sentencing court in determining whether to impose a SSOSA, SSOSA evaluations are not exempt from disclosure under the UHCIA as an exemption to the PRA. Doe G II, 190 Wash.2d at 197, 410 P.3d 1156.
¶ 46 Similar to SSOSAs, SSODAs provide an "alternative to traditional sentencing" for "[j]uveniles facing a first-time conviction for certain sex offenses." State v. Sanchez , 177 Wash.2d 835, 840, 306 P.3d 935 (2013). The sentencing court uses a SSODA evaluation to determine whether to impose a SSODA on an eligible juvenile offender. RCW 13.40.162(3). The SSODA statute requires an evaluation to include the same information as a SSOSA evaluation, including a proposed treatment plan. RCW 13.40.162(2)(a)-(b) ; see RCW 9.94A.670(3). WAC regulations set forth required contents of both SSODA and SSOSA evaluations. WAC 246-930-320(2)(f)(i), (ii) ; see WAC 246-930-010(9).
¶ 47 The sentencing court uses the SSODA evaluation to consider whether a SSODA will benefit the juvenile offender and the community. RCW 13.40.162(3). In making this decision, the sentencing court also considers the victim's opinion and the benefit to the offender and the community of imposing a SSODA. RCW 13.40.162(3).
C. EXEMPTION OF SSOSA AND SSODA EVALUATIONS UNDER UHCIA EXEMPTION TO PRA
¶ 48 In all three offender lawsuits, the superior court ruled that SSOSA and SSODA evaluations were exempt from disclosure under the UHCIA exemption to the PRA. Zink and the County argue that this was error. Does L-O and D argue that the superior court's ruling was proper as a matter of law. Following Doe G II, we agree with Zink and the County that the superior court erred in Does L-O's and Doe D's lawsuits. But we do not reach whether the superior court erred when it ruled the SSOSA evaluations in Doe G's lawsuit were exempt if discovered.
1. SSOSA EVALUATIONS
¶ 49 "A SSOSA evaluation is not directly related to health care," so that SSOSA evaluations do not contain health care information and are accordingly "not exempt from PRA disclosure." Doe G II, 190 Wash.2d at 194, 197, 410 P.3d 1156. Thus, the superior court erred in Does L-O's and Doe D's lawsuits when it ruled that SSOSA evaluations are exempt from disclosure under the UHCIA exemption to the PRA.
¶ 50 In Doe G's lawsuit, the superior court also ruled that Doe G's SSOSA evaluations were exempt from disclosure under the UHCIA as a PRA exemption. But the only evidence provided about Doe G's SSOSA evaluations was that Doe G had never submitted evaluations to the sentencing court and that the County could not locate any of Doe G's SSOSA evaluations. Accordingly, this issue is not ripe for review. See Rosemere Neighborhood Ass'n v. Clark County , 170 Wash.App. 859, 888, 290 P.3d 142 (2012) (a controversy is ripe for review when, among other things, it presents an actual, not merely possible disagreement and involves direct and substantial interests, not interests that are "potential, theoretical, abstract, or academic").
2. SSODA EVALUATIONS
¶ 51 Doe G II did not address juvenile SSODA evaluations. However, Doe G II's reasoning about SSOSA evaluations applies with equal force to juvenile SSODA evaluations.
*851 ¶ 52 Regarding SSOSA evaluations, the critical features making the evaluations "not directly related to [a patient's] health care" were the following:
SSOSA evaluations are made for the purpose of publishing the results to the court. When a SSOSA is requested, the court orders a SSOSA evaluation and uses the evaluation to assess whether the offender should be granted an alternative sentence. RCW 9.94A.670(3) - (4).
....
... In a SSOSA evaluation, the court must decide whether the offender is amenable to treatment and whether a SSOSA will serve public safety interests and the penological goal of rehabilitation.
....
... [T]he treatment plan must ... include "[r]ecommendations for specific behavioral prohibitions, requirements and restrictions on living conditions, lifestyle requirements, and monitoring by family members and others that are necessary to the treatment process and community safety.".
Doe G II, 190 Wash.2d at 194-97, 410 P.3d 1156 (quoting WAC 246-930-320(2)(g)(iii) ).
¶ 53 Juvenile SSODA evaluations share these same critical features. As with a SSOSA evaluation, the sentencing court uses the juvenile SSODA evaluation to make its decision whether to impose a sentencing alternative. See RCW 13.40.162(2), (3). And like a SSOSA evaluation, a juvenile SSODA evaluation informs the sentencing court's decision by providing information about whether the community will benefit from a sentencing alternative and whether the offender is amenable to treatment. RCW 13.40.162(3), (2) ; see RCW 9.94A.670(4). Further, the statutorily required contents of a juvenile SSODA evaluation contained in RCW 13.40.162(2) are nearly identical to the statutorily required contents of a SSOSA evaluation in RCW 9.94A.670(3). Finally, WAC 246-930-320(2)(g)(iii), setting forth the requirements for a treatment plan, applies equally to SSOSA and SSODA evaluations. WAC 246-930-010(9).
¶ 54 Because juvenile SSODA evaluations have the same critical features that the Supreme Court held made SSOSA evaluations not directly related to a patient's health care, SSODA evaluations are also not directly related to a patient's health care. Thus, juvenile SSODA evaluations, like SSOSA evaluations, are not exempt from disclosure under the PRA's exemption incorporating the UHCIA. The superior court erred when it ruled to the contrary in Doe D's and Does L-O's cases.
D. EXEMPTION OF RECORDS UNDER THE PERSONAL INFORMATION EXEMPTION , RCW 42.56.230(7)
¶ 55 In Doe G's and Doe D's lawsuits, the superior court ruled that as a matter of law, information in sex offender registration forms that fell under the personal information exemption, RCW 42.56.230(7), was exempt from disclosure.[8] Zink and the County argue that these rulings were error. Doe G responds that the superior court properly interpreted the law. Doe D does not address this issue in his briefing. We agree with Zink and the County on this issue of first impression.
¶ 56 When interpreting a statute, we look to its plain meaning; but if the plain meaning is ambiguous-susceptible " 'to more than one reasonable interpretation' "-we " 'resort to statutory construction, legislative history, and relevant case law' " to determine legislative intent. Jametsky v. Olsen , 179 Wash.2d 756, 762, 317 P.3d 1003 (2014) (quoting City of Seattle v. Winebrenner , 167 Wash.2d 451, 456, 219 P.3d 686 (2008) ; Christensen v. Ellsworth , 162 Wash.2d 365, 373, 173 P.3d 228 (2007) ).
¶ 57 The personal information exemption, RCW 42.56.230(7)(a), exempts from public inspection and copying "[a]ny record used to prove identity, age, residential address, social security number, or other personal information required to apply for a driver's license or *852 identicard." No case has interpreted this subsection.
¶ 58 The personal information exemption, RCW 42.56.230(7)(a), is ambiguous on its face because it is not clear whether it applies to records actually "used to prove" personal information in an application for a driver's license or identicard or whether it applies to records of a type used to prove such information. See Jametsky , 179 Wash.2d at 762, 317 P.3d 1003. The legislative history reveals that the personal information exemption, RCW 42.56.230(7), was added in 2008, when the legislature enacted laws to prevent profiling and tracking of individuals using their enhanced driver's licenses and identicards.[9] LAWS OF 2008, ch. 200, § 5. This act included a legislative finding that enhanced driver's licenses and identicards were not intended to "facilitate the profiling and tracking of individuals." LAWS OF 2008, ch. 200, § 1(2). Further, the final bill report explained that at the time, there were no laws restricting a nongovernmental entity from using personal information "gained through" an enhanced driver's license or identicard. H.B. REP. ON SUBSTITUTE H.B. 2729, at 2, 60th Leg., Reg. Sess. (Wash. 2008).
¶ 59 The legislative finding's reference to the use of enhanced driver's licenses and identicards to track individuals with those cards and the final bill report's reference to personal information actually "gained" through an enhanced driver's license or identicard both support that the personal information exemption, RCW 42.56.230(7)(a), was intended to prevent the release of actual information submitted to the Department of Licensing. Additionally, in interpreting the PRA, we read its exemptions narrowly. Resident Action Council , 177 Wash.2d at 431, 327 P.3d 600. For these reasons, we interpret the personal information exemption, RCW 42.56.230(7)(a), as exempting only covered personal information actually submitted as part of an application for a driver's license or identicard.
¶ 60 Because the superior court interpreted the personal information exemption, RCW 42.56.230(7)(a), broadly to bar the disclosure of any information of a type that would be submitted in connection to an application for a driver's license or identicard, it erred as a matter of law in Doe D's and Doe G's lawsuits.
E. EXEMPTION OF RECORDS UNDER THE CPA, FORMER RCW 4.24.550, AND THE PRA
¶ 61 In all three offender lawsuits, the superior court ruled that former RCW 4.24.550 barred release of sex offender records because it was an "other statute" exemption to the PRA. The parties agree that under WSP , the superior court's rulings that the CPA, former RCW 4.24.550, was an "other statute" barring the release of records under the PRA, were erroneous.[10] We agree and reverse the superior court's rulings that the CPA, former RCW 4.24.550, barred the release of requested records.
¶ 62 In WSP , the Supreme Court held that " RCW 4.24.550, and specifically RCW 4.24.550(3)(a), is not an 'other statute' exemption under" the PRA. 185 Wash.2d at 368, 374 P.3d 63. Thus, the superior court's rulings to the contrary were incorrect as a matter of law and are reversed.
F. EXEMPTION OF JUVENILE RECORDS UNDER CH. 13.50 RCW AND THE PRA
¶ 63 In Does L-O's, Doe D's, and the County's lawsuits, the superior court ruled that ch. 13.50 RCW is an "other statute" exemption to the PRA so that certain juvenile records were exempt from disclosure. Related to the County's lawsuit, Zink and the County disagree over whether the superior court erred when it determined that unredacted juvenile records and information not found in the official juvenile court file were exempt under ch. 13.50 RCW as an "other statute" PRA exemption. Related to Does L-O's and D's lawsuits, Zink also argues that *853 court-ordered juvenile SSODA evaluations are not confidential because they are part of the official court file. We reject Zink's arguments and follow State v. A.G.S. , 182 Wash.2d 273, 340 P.3d 830 (2014).
¶ 64 It is well settled that ch. 13.50 RCW is an "other statute" exemption to the PRA that bars the release of juvenile justice and care records. See Wright , 176 Wash.App. at 597, 309 P.3d 662.[11] At the time of Zink's request, former RCW 13.50.010 (2013) defined the official juvenile court file as "the legal file of the juvenile court containing the petition or information, motions, memorandums, briefs, findings of the court, and court orders." Former RCW 13.50.010(1)(b). " 'Records' " were the "official juvenile court file, the social file, and records of any other juvenile justice or care agency in the case," and " '[s]ocial file' " was the "juvenile court file containing the records and reports of the probation counselor." Former RCW 13.50.010(1)(c)-(d) (2014).
¶ 65 For records related to the commission of juvenile offenses, "[t]he official juvenile court file of any alleged or proven juvenile offender shall be open to public inspection, unless sealed pursuant to RCW 13.50.260." RCW 13.50.050(2). But "[a]ll records other than the official juvenile court file are confidential and may be released only as provided in [ch. 13.50 RCW], RCW 13.40.215,[12 ] and [former RCW] 4.24.550.[13 ]" RCW 13.50.050(3).
1. NON -SSODA EVALUATION JUVENILE COURT RECORDS
¶ 66 In its lawsuit, the County provided undisputed facts that the juvenile records in PCSD's possession went beyond those that were contained in official juvenile court files.[14] Under RCW 13.50.050(3), which is an "other statute" exemption to the PRA, records relating to the commission of juvenile offenses other than the official juvenile court file are confidential. The superior court's ruling in the County's lawsuit that juvenile records not found within the official juvenile court file were confidential under ch 13.50 RCW as an "other statute" exemption to the PRA was accordingly correct.[15]
2. JUVENILE SSODA EVALUATIONS
¶ 67 Related to Does L-O's and Doe D's lawsuits, Zink argues that SSODA evaluations *854 are part of the official juvenile court file, so that they must be disclosed. But in A.G.S. , our Supreme Court held that a SSODA evaluation does not fit within the definition of an "official juvenile court file" in former RCW 13.50.010(1)(b).[16] 182 Wash.2d at 275, 340 P.3d 830. It is neither a "petition or information, motion, memorandum, brief, finding of the court, or a court order," or indeed a "court document" at all; "[r]ather, it is a psychological report that includes a treatment plan." A.G.S. , 182 Wash.2d at 278, 340 P.3d 830. Accordingly, a SSODA evaluation "is subject to the general rule that all juvenile records not in the official juvenile court file must be kept confidential." A.G.S. , 182 Wash.2d at 275, 340 P.3d 830.
¶ 68 Recognizing that A.G.S. addresses this argument, Zink argues that the holding applies to only SSODAs paid for by an offender, not to court-ordered SSODAs. Zink accurately recognizes that in A.G.S. , the State and the juvenile ordered separate evaluations and it was disclosure of the juvenile's, not the State's, evaluation that was at issue. 182 Wash.2d at 275-76, 340 P.3d 830.
¶ 69 Nevertheless, A.G.S. 's holding applies to all SSODA evaluations, regardless of whether the evaluation is court ordered or paid for by the offender. In A.G.S. , the reason that SSODA evaluations were not part of the official juvenile court file was "the nature of the document itself." 182 Wash.2d at 277, 340 P.3d 830. A.G.S. discussed SSODA evaluations in general, regardless of whether the SSODA was requested by the court or a party. 182 Wash.2d at 276-77, 340 P.3d 830. Thus, A.G.S. relied on the nature of the evaluation, not the identity of the requestor, and accordingly the difference in the requestor's identity is not a persuasive reason to abandon A.G.S. 's holding. 182 Wash.2d at 277, 340 P.3d 830.[17]
¶ 70 We decline to depart from A.G.S. and hold that as a matter of law, the superior court properly ruled that juvenile SSODA evaluations were confidential because they were not part of the official juvenile court file.
G. CRIMINAL RECORDS PRIVACY ACT
¶ 71 Zink argues that the requested evaluations are "conviction records" that must be released in their entirety under the CRPA. We disagree with Zink that juvenile SSODA records[18] in their entirety must be disclosed under the CRPA.
¶ 72 The CRPA expressly supplants the PRA and requires the release of conviction records without restriction. RCW 10.97.140. However, nothing in the CRPA supplants ch. 13.50 RCW, which is the exclusive process for obtaining juvenile justice and care agency records. In re Dependency of KB , 150 Wash.App. 912, 920, 210 P.3d 330 (2009) (citing Deer v. Dep't of Soc. & Health Servs. , 122 Wash.App. 84, 92-93, 93 P.3d 195 (2004) ).
¶ 73 "Conviction record[s]" are "criminal history record information relating to an incident which has led to a conviction or other disposition adverse to the subject." RCW 10.97.030(3). Criminal history record information is essentially identifiable descriptions of offenders coupled with notations of formal criminal charges and the disposition arising therefrom. RCW 10.97.030(4) ; accord *855 Bainbridge Island Police Guild v. City of Puyallup , 172 Wash.2d 398, 422, 259 P.3d 190 (2011).
¶ 74 At the outset, we disagree with Zink that the CRPA's provisions control over ch. 13.50 RCW's process for obtaining juvenile records. See KB , 150 Wash.App. at 920, 210 P.3d 330. But even if the CRPA's provisions controlled, Zink could not obtain SSODA evaluations in their entirety through the CRPA.
¶ 75 Juvenile SSODA evaluations by statute contain information that is not "criminal history record information." A juvenile SSODA evaluation must include an assessment of the offender's problems and deviant behaviors, the offender's social, educational, and employment situation, the offender's amenability to treatment and relative risk to the community, the sources of the examiner's information, and a proposed treatment plan. RCW 13.40.162(2). This information goes well beyond the offender's description, a notation of formal criminal charges, and the disposition arising therefrom. Thus, a juvenile SSODA evaluation necessarily contains information that is not criminal history record information. See RCW 10.97.030(4). And because a juvenile SSODA evaluation contains more than criminal history record information, the information in a SSODA evaluation goes beyond that found in a conviction record. RCW 10.97.030(3).
¶ 76 In short, Zink argues that juvenile SSODA evaluations are conviction records, so that they must be disclosed under the CRPA. But the fact that juvenile SSODA evaluations contain information found in a conviction record does not require disclosure of SSODA evaluations in their entirety under the CRPA. We hold that the CRPA does not apply to SSODA evaluations, which fall under ch. 13.50 RCW; we also hold that even if the CRPA applied, it would not require unredacted SSODA evaluations to be disclosed.
H. EXEMPTIONS CONCLUSION
¶ 77 When enjoining disclosure under RCW 42.56.540, the superior court first must determine "that a specific exemption applies." Yakima County v. Yakima Herald-Republic , 170 Wash.2d 775, 807-08, 246 P.3d 768 (2011). Here, the superior court properly ruled that unredacted juvenile records not contained in the official juvenile court file and held by Pierce County and unredacted juvenile SSODA evaluations were exempt under ch. 13.50 RCW as an "other statute" exemption to the PRA. However, the superior court erred as a matter of law when it ruled that SSOSA/SSODA evaluations were exempt under the PRA's UHCIA exemption, that certain personal information was generally exempt under the personal information exemption, RCW 42.56.230(7)(a), and that registration records and information were exempt under the CPA, former RCW 4.24.550, as an "other statute" exemption.
¶ 78 Juvenile records not found within the official juvenile court file and SSODA evaluations in Pierce County's, Doe D's, and Does L-O's lawsuits were the only records here that as a matter of law were exempt from disclosure under the PRA. We next examine whether the County, Does L-O, and Doe D established the permanent injunction factors in RCW 42.56.540.
I. OTHER PERMANENT INJUNCTION FACTORS
¶ 79 Zink disputes whether the County and the offenders met their summary judgment burdens under RCW 42.56.540 to show undisputed material facts that an injunction was appropriate because (1) examination of the requested records was clearly not in the public interest and (2) would result in substantial and irreparable harm to the offenders or a vital governmental function. Because only juvenile records were exempt from disclosure, we address her arguments as they apply to the juvenile records enjoined from production under ch. 13.50 RCW as an "other statute" PRA exemption.
The examination of any specific public record may be enjoined if, upon motion and affidavit by ... a person who is named in the record or to whom the record specifically pertains, the superior court ... finds that such examination would clearly not be in the public interest and would substantially and irreparably damage any person, or would substantially and irreparably damage vital governmental functions.
*856 RCW 42.56.540. To enjoin disclosure under the injunction statute, a trial court must find "that a specific exemption applies and that disclosure would not be in the public interest and would substantially and irreparably damage a person." Yakima Herald-Republic , 170 Wash.2d at 808, 246 P.3d 768. " '[T]he party seeking to prevent disclosure has the burden of proof.' " Lyft, Inc. v. City of Seattle , 190 Wash.2d 769, 418 P.3d 102, 113-14 (2018) (quoting Spokane Police Guild v. Liquor Control Bd. , 112 Wash.2d 30, 35, 769 P.2d 283 (1989) ).
1. NOT IN THE PUBLIC'S INTEREST
¶ 80 Regarding juvenile SSODA evaluations, Does L-O supported their summary judgment motion with evidence that generalized disclosure of information about juvenile offenders would not advance public safety and was accordingly not in the public's interest. Similarly, Doe D provided evidence that psychosexual evaluation disclosure would deter participation in psychosexual examinations and treatment, harm third parties, and infringe on the assessment of risks to community safety in the sex offender management system. For its part, the County also provided evidence that releasing juvenile records other than those in the official juvenile court file would be contrary to vital government interests, thus being against the public interest.
¶ 81 In response to summary judgment, Zink bears the burden of showing that there was a genuine issue of material fact or that summary judgment is inappropriate as a matter of law. Ranger Ins. Co. v. Pierce County , 164 Wash.2d 545, 552, 192 P.3d 886 (2008). Rather than pointing to evidence that she believes the superior court overlooked when it ruled that there was no genuine issue of material fact that examination was clearly not in the public's interest, Zink relies upon a statement of purpose under the CPA, former RCW 4.24.550. That statement of purpose says, "[T]he penal and mental health components of our justice system are largely hidden from public view and that lack of information from either may result in failure of both systems to meet this paramount concern of public safety." LAWS OF 1990, ch. 3, § 116.
¶ 82 But the statement of purpose to the CPA, former RCW 4.24.550, shows no more than that the purpose of the CPA was to increase awareness of penal and mental health components of the justice system. It does not support that the public has an interest in the juvenile records that are exempt from disclosure under ch. 13.50 RCW. Zink fails to put forth evidence that rebuts Does L-O's, Doe D's, and the County's evidence that it is clearly not in the public interest to disclose juveniles' SSODAs and records not within the official juvenile court file. Accordingly, Zink fails to create a genuine issue of material fact regarding whether disclosing the juvenile records she requested is clearly not in the public interest.
2. SUBSTANTIAL AND IRREPARABLE HARM
¶ 83 Regarding substantial and irreparable harm to themselves or a vital governmental interest, again, Does L-O and D and the County put forth detailed, unrebutted evidence of the substantial and irreparable harm of SSODA and other juvenile record disclosure. Does L-O provided evidence that releasing unredacted juvenile SSODA evaluations would increase known risk factors, revictimize victims, cause social isolation of offenders, decrease compliance with registration requirements, and compromise counseling, treatment, and rehabilitation efforts. Their evidence included that public notification disproportionately impacted juvenile offenders, those who were otherwise the least likely to reoffend. Similarly, Doe D explained that psychosexual evaluation release would deter participation in treatment and injure victims of uncharged offenses. And the County explained that the records in its possession included highly confidential information about juveniles' mental health and health care.
¶ 84 Again, Zink does not point to evidence she believes that the superior court overlooked but claims that the evidence provided by the offenders and the County was nothing more than evidence of "possible harm" and "embarrassment." Reply Br. of Appellant/Cross-Resp't at 10 (bolding omitted). To the contrary, the offenders' and the County's evidence was detailed and substantiated *857 harm not only to the offenders but to third parties, vital governmental functions, and the public in general. Zink fails to create a genuine issue of material fact regarding whether disclosing the juvenile records she requested would damage the offenders or a vital governmental function. Accordingly, we affirm the superior court's orders granting summary judgment in this regard.
J. CONCLUSION: SUMMARY JUDGMENT AND PERMANENT INJUNCTIONS IN OFFENDERS' AND COUNTY'S LAWSUITS
¶ 85 When the superior court granted Does L-O's motion for summary judgment, it erred when it ruled that the CPA, former RCW 4.24.550, was an "other statute" PRA exemption that barred the release of registration records and information and SSOSA/SSODA evaluations. See WSP , 185 Wash.2d at 368, 374 P.3d 63. The superior court also erred when it granted summary judgment and enjoined the release of unredacted SSOSA/SSODA evaluations under the UHCIA exemption to the PRA. See Doe G II, 190 Wash.2d at 197, 410 P.3d 1156. However, the superior court properly ruled that unredacted juvenile SSODA evaluations fell under ch. 13.50 RCW, an "other statute" exempting records from disclosure, and that the evidence was undisputed that the offenders had met RCW 42.56.540 's requirements for a permanent injunction. See A.G.S. , 182 Wash.2d at 275, 340 P.3d 830 ; Wright , 176 Wash.App. at 597, 309 P.3d 662.
¶ 86 When the superior court granted Doe D's motion for summary judgment, it erred when it ruled that the CPA, former RCW 4.24.550, was an "other statute" PRA exemption that barred the release of registration records and information and SSOSA/SSODA evaluations. See WSP , 185 Wash.2d at 368, 374 P.3d 63. We also hold that the superior court erred when it ruled that information of a type required to apply for a driver's license was exempt from disclosure under the personal information exemption, RCW 42.56.230(7). And the superior court erred when it ruled that unredacted SSOSA/SSODA evaluations were exempt from disclosure under the UHCIA exemption to the PRA. See Doe G II, 190 Wash.2d at 197, 410 P.3d 1156. However, the superior court properly enjoined the release of unredacted juvenile SSODA evaluations under ch. 13.50 RCW, including ruling that the evidence was undisputed that the offenders had met RCW 42.56.540 's requirements for a permanent injunction. See A.G.S. , 182 Wash.2d at 275, 340 P.3d 830 ; Wright , 176 Wash.App. at 597, 309 P.3d 662.
¶ 87 As for Doe G's motion for summary judgment and a permanent injunction, the superior court erred when it ruled that the CPA, former RCW 4.24.550, was an "other statute" PRA exemption that barred the release of his sex offender registration forms. See WSP , 185 Wash.2d at 368, 374 P.3d 63. We also hold that the superior court erred when it ruled that the personal information exemption, RCW 42.56.230(7)(a), barred the release of personal information of a type used to apply for a driver's license. We do not address whether the superior court erred when it ruled that if discovered, the SSOSA evaluations were exempt from disclosure under the UHCIA as a PRA exemption.
¶ 88 Finally, the superior court properly ruled that to the extent the County held juvenile justice and care agency records not otherwise contained in the official juvenile court file, ch. 13.50 RCW is an "other statute" that exempts those records from production. See A.G.S. , 182 Wash.2d at 275, 340 P.3d 830 ; Wright , 176 Wash.App. at 597, 309 P.3d 662. The superior court also properly ruled that the County had provided undisputed evidence to meet its burden under RCW 42.56.540, setting forth the PRA's permanent injunction factors.
¶ 89 We reverse in part and remand the superior court's order granting summary judgment and a permanent injunction in Doe G's lawsuit. We reverse in part and affirm in part the orders granting summary judgment and permanent injunctions in Doe D's and Does L-O's lawsuits and remand for further proceedings. We also affirm the superior court's ruling on the County's summary judgment motion enjoining the release of unredacted juvenile court records not found in the official juvenile court file. Next, we look to whether the superior court properly granted summary judgment and dismissed Zink's *858 counterclaims against the County for PRA violations.
K. COUNTERCLAIMS AGAINST COUNTY FOR ALLEGED PRA VIOLATIONS
¶ 90 Zink argues that the trial court erred when it granted the County's summary judgment motion and dismissed her counterclaims with prejudice. We address her arguments related to the PCSD and to PCPO in turn below.
¶ 91 In addition to reviewing summary judgment de novo, we review de novo whether an agency complied with the PRA. RCW 42.56.550(3).
1. PIERCE COUNTY SHERIFF'S DEPARTMENT
¶ 92 When the superior court granted the County's motion for summary judgment dismissal of Zink's counterclaims against the PCSD, it concluded that PCSD had the right to give third-party notice under RCW 42.56.540 and PCC 2.04.040. Further, the PCSD did not have to provide an exemption log because its production was not yet final. Zink raises several arguments related to the superior court's legal conclusions.[19]
a. THIRD-PARTY NOTIFICATION
¶ 93 First, related to third-party notification, Zink contends that as a matter of law, RCW 42.56.540, setting forth the requirements to enjoin production, and former RCW 42.56.520(2) (2010), allowing additional time to respond to a record request, disallow notifying third parties unless an exemption applies. Under her interpretation, she argues that the PCC provision allowing a records officer to notify third parties without identifying an exemption violates RCW 42.56.540 and former RCW 42.56.520(2).[20] Zink also asserts that she created a genuine issue of material fact as to whether the PCSD acted in good faith because it was aware that in other jurisdictions, offenders had obtained injunctions to bar the release of records. These arguments fail.
¶ 94 RCW 42.56.540 gives an agency the "option" of notifying third persons named in a record unless notice is required by law, in which case there is no "option." Former RCW 42.56.520(2) allows additional time to respond to a request if there is a need to notify third persons. PCC 2.04.040D provides, "In the event that the requested records contain information that may affect rights of others and may be exempt from disclosure, the public records officer or designee may, prior to providing the records, give notice to such others whose rights may be affected by the disclosure."
¶ 95 RCW 42.56.540 and former RCW 42.56.520 specifically state that if a third person is named in a record, the County may notify the third person that the record is the subject of a PRA request. Contrary to Zink's arguments, there is no requirement that the County first determine that an exemption will apply to the record. Indeed, to require an exemption to be identified first contravenes RCW 42.56.540 's mechanism for allowing the third person to then move to enjoin the examination of the record by showing that an exemption exists. See Yakima Herald-Republic , 170 Wash.2d at 808, 246 P.3d 768. We disagree with Zink that allowing the County to notify offenders before determining that an exemption applied circumvents the PRA.
¶ 96 In addition, and contrary to Zink's argument, PCC 2.04.040 is consistent with RCW 42.56.540 and former RCW 42.56.520(2). Again, it reflects the PRA's option for agencies to notify third persons who may be affected by production of a requested record because, as here, they are identified in it.
*859 ¶ 97 Finally, related to Zink's argument that she created a genuine issue of material fact regarding whether other jurisdictions released offender records, Zink points to her summary judgment opposition evidence that Yakima County had released SSOSA evaluations. But this does not create a factual issue regarding whether the County was aware of "other jurisdictions" having received similar requests, resulting in offenders obtaining injunctions. CP at 1607. Thus, Zink fails to create a genuine issue of material fact on this point.
¶ 98 Zink's arguments that the superior court wrongly granted summary judgment of her counterclaims against the PCSD related to third-party notification accordingly fail.
b. WITHHOLDING RECORDS
¶ 99 Second, Zink argues that the PCSD violated the PRA because it was not allowed to "withhold" records until it identified an exemption and produced an exemption log. Opening Br. of Appellant at 64. We disagree and follow our opinion in Hobbs v. Wash. State Auditor's Office , 183 Wash.App. 925, 335 P.3d 1004 (2014).
¶ 100 The PRA does not allow a requestor "to initiate a lawsuit prior to an agency's denial and closure of a public records request." Hobbs , 183 Wash.App. at 935, 335 P.3d 1004. "Under the PRA, a requester may only initiate a lawsuit to compel compliance with the PRA after the agency has engaged in some final action denying access to a record." Hobbs , 183 Wash.App. at 935-36, 335 P.3d 1004. When an agency produces records in installments, the agency does not "deny" access to the records until it finishes producing all responsive documents. Hobbs , 183 Wash.App. at 936-37, 335 P.3d 1004.
¶ 101 Here, the County provided evidence in support of summary judgment that it was still producing records in response to Zink's request as of the date Zink filed her counterclaims. When the County moved for summary judgment and put forth facts to support that the PCSD had not yet taken a final action on Zink's PRA request, the burden shifted to Zink to show that the PCSD had taken a final action on her request. But to support her claims, Zink simply relied upon the fact that the PCSD had sought judicial review when the County instituted its lawsuit to prevent PCSD from having to disclose juvenile records not in the official juvenile court file. Zink submitted her own declaration repeating her allegation that the PCSD was "withholding" records, CP at 2104, and claiming that the PCSD's production was final because it had sought an injunction barring the release of juvenile records and informed Zink it would not release some sentencing and judgment documents until it obtained judicial review.
¶ 102 Even viewed in the light most favorable to Zink, the fact that the PCSD sought judicial review of whether some records were exempt does not constitute a "final" action on Zink's request. The PCSD did not refuse to disclose records. Rather, it sought legal review of whether the records were exempt or whether they were not exempt and thus would be released to Zink.
¶ 103 Zink relies on City of Lakewood v. Koenig , which she claims stands for the rule that an agency must explain its exemptions at the outset, in response to a request. 182 Wash.2d 87, 343 P.3d 335 (2014). But reliance on Koenig assumes that the agency redacted or withheld records in response to a request; here, PCSD had not yet finished producing records in response to Zink's request. Accordingly, Koenig is inapplicable. We disagree with Zink that she has shown that she waited for a final action denying access to a record before initiating a lawsuit. See Hobbs , 183 Wash.App. at 935, 335 P.3d 1004.
¶ 104 Zink also argues that Hobbs is distinguishable because it involves " RCW 42.56.520" and she filed her "complaint" under " RCW 42.56.550." Opening Br. of Appellant at 71. Contrary to Zink's assertions, her counterclaims repeatedly referenced former RCW 42.56.520. We hold that the superior court properly granted summary judgment dismissal of Zink's counterclaims against PCSD for "withholding" records.
2. PIERCE COUNTY PROSECUTOR'S OFFICE
a. SUPERIOR COURT'S RULING
¶ 105 Related to PCPO production, the superior court found that the facts were undisputed *860 that the PCPO required Zink to make her request via fax and/or U.S. postal service and to provide her correct return address. On November 21, Zink e-mailed her records request to the PCPO and requested records be provided by e-mail or fax. On November 26, the PCPO sent Zink a letter that although an e-mailed request was improper, it was searching for responsive records.
¶ 106 On December 4, the PCPO sought clarification of Zink's request and also explained that if Zink did not contact the office within 30 days, it would close her request. On January 9, 2015, the PCPO sent Zink a letter again seeking clarification of her request and explaining how charges would be assessed. The PCPO explained that Zink could view the records for free but would have to pay $0.15 per page plus postage and an hourly labor rate for scanning copies. On January 23, the PCPO sent Zink a letter that the first installment of records was available and could be copied and mailed to her for $225.70. Further, the cost of scanning the records to a CD was $84.20, and the cost of faxing the records was $80.48. The PCPO would close Zink's request if it did not hear from her within 30 days.
¶ 107 On January 26, Zink faxed the PCPO and requested "electronic copies ... via email or placed in the cloud." CP at 2679. She also requested an itemized cost analysis. On January 28, the PCPO mailed Zink a letter again outlining the calculation of costs. On January 31, Zink faxed the PCPO and stated that because she felt the PCPO had not adequately explained its determination of costs, she would consider the PCPO's decision as a denial of access. On February 23, the PCPO closed Zink's request as abandoned.
¶ 108 The superior court found that the facts were undisputed that the PCPO sent its letters to the wrong address for Zink because of a clerical error. However, the incorrect address was immaterial because Zink ultimately received the communications and invited the error by failing to make her original request in the required format. The superior court determined as a matter of law that the cost estimate was reasonable and that the PRA did not bar the PCPO from producing records only via fax, U.S. mail, and digital video disk (DVD)/CD.
¶ 109 Zink raises several arguments challenging these rulings, which we address in turn below.[21]
b. REFUSAL TO PROVIDE RECORDS ELECTRONICALLY
¶ 110 On appeal, Zink challenges the PCPO's refusal to provide records by e-mail or "the cloud" as a PRA violation. But her argument fails as a matter of law because " '[n]othing in the PRA obligates an agency to disclose records electronically.' " Benton County v. Zink , 191 Wash.App. 269, 281, 361 P.3d 801 (2015) (quoting Mitchell v. Dep't of Corr. , 164 Wash.App. 597, 606, 277 P.3d 670 (2011) ), review denied , 185 Wash.2d 1021, 369 P.3d 501 (2016).
c. ALLEGED FACTUAL DISPUTE
¶ 111 Zink also asserts that she has created a genuine issue of material fact as to whether the PCPO complied with former RCW 42.56.070(7) (2005), which required that an agency maintain a statement of the "actual per page cost or other costs, if any, that it charges for providing photocopies of public records and a statement of the factors and manner used to determine the actual per page cost or other costs, if any." Opening Br. of Appellant at 75 (bolding and underline omitted); (quoting former RCW 42.56.070(7) (2005) ). We disagree.
¶ 112 In support of summary judgment, the County provided the PCPO public record officer's statement that she had sent a letter to Zink on January 9, 2015, explaining that the cost for copies of records was $0.15 per page, plus postage, and that an hourly rate would be assessed for scanning copies to CD or faxing copies. Attached to this letter, the PCPO provided a statement of factors and manner breaking down the cost calculation for scanning copies to CD and mailing them. The PCPO also provided a copy of PCC
*861 2.04.070, detailing the per-page price for copies. Further, on January 28, after Zink requested the statements of factors and manner for determining costs, the PCPO again mailed copies of these documents to Zink. Zink replied, referencing the statement and stating that she believed it was inadequate.
¶ 113 Zink does not cite to the record or provide any argument about what evidence she produced that created a genuine issue of material fact on this issue. Neither does Zink's affidavit in opposition to the County's summary judgment motion provide any evidence to dispute that the PCPO maintained a statement of costs and provided it to her. Accordingly, Zink fails to create a genuine issue of material fact as to whether the PCPO maintained a statement of factors and manner used to determine costs and complied with former RCW 42.56.070(7).
d. REQUIRING REQUESTS TO BE MADE BY FAX OR U.S. MAIL
¶ 114 Zink argues that the superior court erred when it concluded that the PCPO was allowed to require PRA requests to be made by fax or U.S. mail. She alternatively argues that there is a genuine issue of material fact as to whether she did, in fact, make her original request by fax. But Zink did not bring a counterclaim on the basis that the PCPO violated the PRA by sending correspondence to the wrong address or requiring PRA requests to be made by fax or U.S. mail. Accordingly, whether PCPO violated the PRA in this regard cannot be the basis for summary judgment in Zink's favor, and we decline to review her arguments in this regard.
L. CONCLUSION: PIERCE COUNTY SUMMARY JUDGMENT ORDER
¶ 115 The superior court properly dismissed Zink's counterclaims related to PRA violations. Thus, we affirm the superior court's order granting summary judgment and a permanent injunction in the County's lawsuit.
II. USE OF PSEUDONYMS
¶ 116 Zink argues that the superior court erred when it allowed the offenders to proceed under pseudonyms.[22] She raises arguments related to her state constitutional rights, GR 15, and the rules of civil procedure. Does L-O argue that no court record was "seal[ed]" because they never filed their real names and that the use of pseudonyms does not violate the civil rules. Responsive Br. of Resp't Does L-O at 28. We agree with Zink: under Doe G II, the superior court had to apply the Seattle Times Co. v. Ishikawa[23] factors before allowing Does L-O to proceed under pseudonyms.
¶ 117 We review a trial court's decision to allow plaintiffs to proceed under pseudonyms for an abuse of discretion. John Doe G v. Dep't of Corr. , 197 Wash.App. 609, 628, 391 P.3d 496 (2017) ( Doe G I ), rev'd on other grounds , 190 Wash.2d 185, 410 P.3d 1156. The Washington Constitution, article I, section 10, guarantees the open administration of justice, including public access to court records. Dreiling v. Jain , 151 Wash.2d 900, 908, 93 P.3d 861 (2004). Applying the experience and logic test, "names in pleadings are subject to article I, section 10 and redaction must meet the Ishikawa factors." Doe G II, 190 Wash.2d at 201, 410 P.3d 1156. A trial court must also justify its redaction of names in pleadings under GR 15. Doe G II, 190 Wash.2d at 202, 410 P.3d 1156.
¶ 118 Here, as in Doe G II, convicted sex offenders sought to proceed under pseudonyms. Because convicted sex offenders' names in pleadings implicate article I, section 10, redaction of those names from pleadings had to meet the Ishikawa factors. 190 Wash.2d at 199, 410 P.3d 1156.
¶ 119 However, the superior court did not conduct an Ishikawa analysis before allowing Does L-O to proceed under pseudonyms. Rather, the superior court found that the public had little interest in the plaintiffs' real *862 names and that Zink would not be prejudiced if the Does proceeded under pseudonyms.
¶ 120 The findings-or lack thereof-in the record are insufficient to allow Does L-O to proceed under pseudonyms. Because the superior court misapplied the law by failing to conduct an Ishikawa analysis, it abused its discretion. Therefore, we reverse the superior court's ruling allowing Does L-O to proceed under pseudonyms.[24]
III. CLASS CERTIFICATION
¶ 121 Zink argues that the superior court erred when it certified Does L-O's and Doe D's lawsuits as class actions. She claims that the trial court could not certify the classes without knowing the plaintiffs' true identities. She further claims that class actions cannot be brought under the PRA unless the class representative is named in every record to be enjoined. We reject both of Zink's arguments, as set forth below.
¶ 122 We review decisions to certify a class for an abuse of discretion. Doe G I, 197 Wash.App. at 628-29, 391 P.3d 496. Class certification is appropriate if the class is sufficiently numerous, has common questions of law or fact, "the claims ... of the representative parties are typical of the claims or defenses of the class," and "the representative parties will fairly and adequately protect the interests of the class." CR 23(a)(3), (4). Typicality is satisfied if the class members' claims all arise from the same course of conduct and are based on the same legal theory. Pellino v. Brink's Inc. , 164 Wash.App. 668, 684, 267 P.3d 383 (2011).
A. PLAINTIFF'S TRUE IDENTITIES UNNECESSARY
¶ 123 Zink argues that the trial court must know the true identities of the class representatives in order to certify a class action and that here, without knowing Does L-O's or Doe D's true names, it could not determine whether they would adequately protect the classes' interests or had typical claims with the classes. We disagree.
¶ 124 Related to typicality, Does L-O each alleged they were compliant level 1 sex offenders. They argued that each of them would suffer the same harms from release of their records and that they all sought injunctions barring their records' release. To support these arguments, they provided voluminous evidence that they and all class members faced harm from disclosure of their information, including harassment and potential loss of economic opportunity. Related to adequacy, Does L-O again provided abundant evidence that they stood to suffer the same injury as the class, did not have antagonistic claims, and had retained competent and capable counsel.
¶ 125 Similarly, Doe D alleged he was a level 3 sex offender registered in Pierce County and had shown his claims were typical of the class of level 2 and 3 offenders registered in the County because they would all suffer the same harms from disclosure of their records and based their claims on the same legal theories. In support, Doe D provided his own declaration that he was a registered level 3 sex offender who feared harm from the disclosure of his exact address and mental health treatment records. Related to adequacy, Doe D asserted that he brought coextensive claims with the class and provided evidence that he had retained "competent and capable attorneys." CP at 2932.
¶ 126 The offenders provided ample evidence to support that their claims were typical of their respective classes and that they would be adequate representatives. The superior court did not need to know the class representatives' names; rather, it was provided with detailed declarations under penalty of perjury stating that the class members, as either compliant level 1 sex offenders or a registered level 3 offender, would suffer the same injury and brought the same claims as their respective classes. The superior court did not abuse its discretion when it certified the classes.
B. CLASS ACTIONS UNDER THE PRA
¶ 127 Regarding Zink's argument that the PRA bars class actions if the named *863 representatives are not named in every record the class seeks to enjoin, we follow Division One's holding in Doe G I 's analysis on this point. There, Division One of this court pointed out that Zink's argument reflected a fundamental misunderstanding of the nature of class action litigation because "even statutes the legislature phrases in individual terms allow for class actions." Doe G I, 197 Wash.App. at 629-30, 391 P.3d 496. Based on Doe G I 's holding, we reject Zink's arguments and affirm the superior court's orders granting class certification in Doe D's and Does L-O's lawsuits.
IV. APPELLATE COSTS AND CONCLUSION
¶ 128 Zink requests appellate costs if she substantially prevails on review. However, Zink does not substantially prevail; rather, we affirm summary judgment on her counterclaims and we reject her arguments that the superior court erred when it exempted juvenile records from disclosure. Because Zink does not substantially prevail, we decline to award appellate costs to her.
¶ 129 We affirm the orders certifying Doe D's and Does L-O's lawsuits as class actions. We reverse and remand the order allowing Does L-O to proceed under pseudonyms. We affirm the order granting Pierce County's motion for summary judgment and a permanent injunction.
¶ 130 Regarding the order granting Does L-O's motion for summary judgment and a permanent injunction, we affirm the exemption of juvenile SSODA evaluations but reverse the exemption of SSOSA evaluations and registration records and information from disclosure. Regarding the order granting Doe D's motion for summary judgment and a permanent injunction, we affirm the exemption of juvenile SSODA evaluations but reverse the exemption of SSOSA evaluations and registration records and information from disclosure. And regarding the order granting Doe G's motion for summary judgment and a permanent injunction, we reverse the exemption of his sex offender registration forms from disclosure. We remand for proceedings consistent with our decision.
We concur:
MELNICK, J.
SUTTON, J.

This appeal does not involve responses of agencies other than PCSD and PCPO. Accordingly, we use "the County" to collectively refer to PCSD and PCPO, unless the context requires further specificity.

The PRA's "other statute" exemption exempts from production records that fall within "the specific exemptions of [an] other statute which exempts or prohibits disclosure of specific information or records." Former RCW 42.56.070(1) (2005).

A treatment provider opined based on research and personal experience that sex offenders whose names appeared on public websites suffered "significant barriers to housing, employment, and reintegration into the community." CP at 1392. Community notification made offenders unable to secure stable housing or employment and being "outed" by a third-party website often caused offenders to lose their jobs or be unable to find employment or housing opportunities. CP at 1392.
The Does also provided their own declarations that disclosure of their identities and other information would result in considerable harm to them. Two of the Does stated that disclosure would result in losing employment and education opportunities and harm to their families.

Doe D provided evidence that making it easier for members of the public to locate sex offenders by, for example, providing their precise residential addresses would "undoubtedly lead to harm against them" and that "[v]igilantes" used specific information about sex offenders "to harm them." CP at 1527. "Public disclosure of this kind of information regarding level II and III sex offenders seriously jeopardizes the safety of the juveniles and adults whose precise location information would be available to anyone who wants to cause them harm." CP at 1527. Doe D stated that disclosure would cause harm to himself and the people he lived with.

In support of his summary judgment motion, Doe G provided his declaration that he was a registered level 3 sex offender who resided in Pierce County and had participated in a SSOSA evaluation but had not requested a SSOSA sentence. Doe G stated that he was elderly and was concerned about his ability to protect himself and his family "from harassment and the threat of physical violence" and that his situation was extremely "disruptive, vexatious and hurtful." CP at 1229-30.

Its productions are summarized below:
1. December 23: Judgment and sentences for level 2 and 3 offenders with last names A-B,
2. February 17, 2015: Registration file records for noncompliant level 1 offenders with last names A-D,
3. April 14: Registration file records for noncompliant level 1 offenders with last names E-G, H-J,
4. June 8: Registration file records for noncompliant level 1 offenders with last names K-M,
5. July 7: Registration file records for noncompliant level 1 offenders with last names N-Z,
6. July 24: Judgment and sentences and victim impact statements for offenders with last names Y-Z.
PCSD noted redactions in cover letters or exemption logs, although through an oversight, an exemption log for the April 14 production was not sent to Zink until August 12.

Zink provides over 150 assignments of error in her appellant's brief, many of which are unsupported by argument or citation to authority. We address only those assignments of error that are supported by argument and citation to legal authority. RAP 10.3(a)(6). Further, to the extent that Zink relies on her trial court briefing to satisfy RAP 10.3(a)(6), we reject her attempt to incorporate by reference her arguments below. See Holland v. City of Tacoma , 90 Wash.App. 533, 538, 954 P.2d 290 (1998). And we do not address the arguments Zink first makes in her reply brief, including that the superior court was biased against her. Cowiche Canyon Conservancy v. Bosley , 118 Wash.2d 801, 809, 828 P.2d 549 (1992).

In the summary judgment order in Doe D's lawsuit, the superior court ruled that "[s]ex offender registration forms, which contain the offender's specific residential address and other information of that type, are exempt under [the personal information exemption, RCW 42.56.230(7) ]." CP at 2307.

As enacted, the personal information exemption, RCW 42.56.230(7)(a), created an exemption for "[d]ocuments and related materials and scanned images of documents and related materials used to prove ... personal information required to apply for a driver's license or identicard." Laws of 2008, ch. 200, § 5.

Doe G does not address this issue.

In Wright , we held that the PRA did not apply to a request for a recorded interview because the interview was a record maintained in a juvenile's social file and was thus governed by ch. 13.50 RCW. 176 Wash.App. at 597-98, 309 P.3d 662 ; see also Anderson v. Dep't of Soc. & Health Servs. , 196 Wash.App. 674, 684, 384 P.3d 651 (2016) (the language in ch. 13.50 RCW creates an exception to PRA disclosure), review denied , 188 Wash.2d 1006, 393 P.3d 786 (2017) ; In re Dependency of KB , 150 Wash.App. 912, 923, 210 P.3d 330 (2009) (ch. 13.50 RCW provides the exclusive "process, including sanctions, for obtaining juvenile justice and care agency records"); Deer v. Dep't of Soc. & Health Servs. , 122 Wash.App. 84, 91, 93 P.3d 195 (2004) (ch. 13.50 RCW is an "other statute" exemption).

RCW 13.40.215 creates community notification provisions for juveniles found to have committed a violent offense, a sex offense, or stalking.

Former RCW 4.24.550 governs risk assessment and notification when sex offenders are released from confinement. See also Sanchez , 177 Wash.2d at 848, 306 P.3d 935 (RCW 13.50.050 incorporates an "exception for the release of SSODA evaluations to local law enforcement for the purpose of making sex offender risk assessments").

The records held by the PCSD included the following:
Residential Admission Summary from JRA [juvenile rehabilitation administration][,] ... JRA intake interview with mental health/physical information, JRA client history review, ... [Child Protective Services] referrals, Disclosure Summary of Child Victim Interview, JRA integrated treatment program, U[rinalysis] Lab reports from probation, Psycho Sexual Polygraph Examination, Juvenile Detention Reports, Pre[d]isposition Diagnosis Report, Memorandum from Juvenile Detention Probation to Court, Proteen Health Social Services Report.
CP at 1607.

We note that under RCW 13.50.050(5), information not within an official juvenile court file concerning a juvenile or a juvenile's family may be released only when redacted. In the County's case, the superior court ruled that if redacted, juvenile records not within the official juvenile court file could be released. On appeal, neither Zink nor the County argue that this was error. Accordingly, we do not reach whether RCW 13.50.050(5) allows redacted juvenile records not within the official juvenile court file to be released.

In 2016, the legislature amended the definition of "official juvenile court file" in former RCW 13.50.010. Laws of 2016, ch. 93, § 2. We rely on the definition used in A.G.S. and in effect when Zink made her public records request.

Zink also briefly relies upon Koenig v. Thurston County , which she claims held that SSODA evaluations are sentencing documents that are part of the official juvenile court file. 175 Wash.2d 837, 287 P.3d 523 (2012). But Koenig held that only SSOSA/SSODA evaluations do not fall within the PRA's investigative records exemption because they are tools used "after a criminal investigation has been conducted." 175 Wash.2d at 848, 287 P.3d 523. Its holding does not apply here.

Because SSOSA evaluations are not exempt from disclosure, we do not need to reach whether the CRPA otherwise requires SSOSA evaluations' release. Zink also briefly argues that RCW 9.94A.475, requiring prosecutors to maintain felony sentences as public records, requires juvenile SSODA evaluations to be released. Her reliance on this statute is misplaced because it is intended solely for prosecutors' guidance and "may not be relied upon to create a right or benefit, substantive or procedural, enforceable at law by a party in litigation with the state." RCW 9.94A.401.

Zink does not argue that PCSD assessed costs in violation of the PRA; she acknowledges that only PCPO assessed any costs.

Zink also briefly claims that RCW 42.56.240(8) barred the County from disclosing her information in the notification letters. We disagree. RCW 42.56.240(8) exempts from public inspection and copying "[i]nformation submitted to the statewide unified sex offender notification and registration program under RCW 36.28A.040(6) by a person for the purpose of receiving notification regarding a registered sex offender." (Emphasis added.) This statute clearly does not apply to Zink's PRA request to the County.

Zink's exemption log and third party notification arguments pertain to PCSD, not PCPO; as Zink recognizes, PCPO closed Zink's request without exemptions or third-party notification.

We do not reach Zink's arguments that the superior court erred when it allowed Does D and G to file their lawsuits under pseudonyms. Zink will receive Doe G's name and has already received Doe D's name. Thus, these issues are moot. WSP , 185 Wash.2d at 385, 374 P.3d 63.

97 Wash.2d 30, 37-39, 640 P.2d 716 (1982).

Because we reverse and remand, we do not reach Zink's remaining arguments that the superior court erred when it allowed the offenders to bring their lawsuits under pseudonyms.